A. Hartman y Compañía, Demandante y Apelante *v.* Porrata et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de Guayama en pleito sobre reivindicación.

No. 2103.—Resuelto en marzo 15, 1921.

Reivindicación—Lindero Indefinido—Prueba Contradictoria Sobre Linderos.—Cuando en una acción reivindicatoria surgida de una controversia sobre la colindancia entre dos propiedades la prueba respecto a dicha colindancia es contradictoria, la corte debe dirimir el conflicto y si la preponderancia de la misma está a favor del demandante la acción reivindicatoria debe prosperar, sin que sea necesario un procedimiento previo para determinar la colindancia, pues tal determinación puede hacerse dentro de la acción reivindicatoria.

Sentencia Dictada en Apelación.—De acuerdo con el artículo 306 del Código de Enjuiciamiento Civil enmendado en 1906, el Tribunal Supremo revisa los hechos y dicta la sentencia que hubiera debido dictar la corte inferior.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. T. Bernardini.*

Abogado de los apelados: *Sr. J. C. Ramos.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

Esta fué una acción reivindicatoria en la cual A. Hartman & Co. era demandante y los demandados fueron Elvira de Porrata Doria y Agustín Bird Elías.

Estamos de acuerdo con varias de las conclusiones de hecho a que llegó la corte sentenciadora las cuales hemos comprobado mediante un examen independiente y enumeraremos por orden, a saber:

"1. Que la demandante es una sociedad industrial, mercantil domiciliada en el pueblo de Arroyo y con capacidad para demandar y ser demandada; y los demandados son mayores de edad, residentes, doña Elvira Porrata Doria en Ponce y don Agustín Bird y Elías en esta ciudad, habiéndose sometido a la jurisdicción de esta corte.

"2. Que la demandante es dueña de una finca rústica denominada 'Hacienda Reunión' constante de 398 cuerdas y 16 centavos de otra, sita en el barrio 'Jobos,' lindando por el norte con la estancia 'Rosada' de don Juan H. Blondet y 'Melanía' de don Carlos Blondet; por el sud con la orilla del mar, hacienda 'Cayures,' que fué de la sucesión de don Pedro Amorós y la hacienda 'Mercedes' de la sucesión de don Ignacio Díaz; y al Este con la estancia de don Santiago Porrata

y la citada 'Mercedes' y por el oeste con la hacienda 'Cayures,' 'La Gregoria' de don Jesús María Texidor y la estancia 'Rosa.' Habiéndose segregado de esta finca una parcela a favor de don Jeremiah Smith, quedó reducida su cabida a 364 cuerdas con 83 centavos de otra; cuya finca adquirió la demandante de los señores Rafael y Mateo Amorós y Alsina.

"3. Que la demandada doña Elvira de Porrata Doria, es dueña de una parcela de terreno compuesta de 46 cuerdas con 6 centavos de otra, radicada en el barrio de 'Jobos' de este término municipal, lindando por el norte con el antiguo cauce del río 'Guamaní,' Sucesión Boyer y hacienda 'Palmira;' por el sud con la finca llamada 'Mercedes' y don Erasmo Porrata, y por el oeste la hacienda 'Reunión,' de que la separa el río, cuya finca adquirió por herencia.

"4. Que los anteriores dueños de la hacienda 'Reunión,' los señores Amorós, poseyeron la referida hacienda como dueños y la finca de la demandada señora Porrata Doria en arrendamiento. Que estando los señores Amorós en posesión de ambas fincas y para el mejor disfrute de las mismas, destruyeron y quitaron la cerca o línea divisoria que separaba las referidas fincas desapareciendo los puntos que marcaban la colindancia, formando con dichas dos fincas un solo cuerpo, disfrutándolas en esta forma y durante un gran número de años.

"5. Que estando las fincas en este estado, los señores Amorós enajenaron sus derechos sobre la hacienda 'Reunión' y traspasaron el arrendamiento de la finca de la demandada viniendo ambas fincas a poder de la demandante, la hacienda 'Reunión' en propiedad y la finca de la demandada Porrata Doria en arrendamiento. Que la demandante siguió disfrutando ambas fincas como un solo cuerpo hasta el 5 de enero de 1917 en que doña Elvira de Porrata Doria arrendó su estancia al otro demandado Agustín Bird y Elías.

"6. Que en primero de febrero de 1917, habiendo vencido el arrendamiento, la demandante hizo entrega de la finca de la demandada al nuevo arrendatario don Agustín Bird Elías.

"7. Que una vez tomada posesión de la finca por el Sr. Bird, la demandante trató por medio de sus agentes y empleados de poner la cerca que fija la colindancia de ambas fincas, cuya cerca trató de situar por la margen derecha del río 'Guamaní.' Que el Sr. Bird, como arrendatario y representante de la demandada se opuso a que se pusiera la cerca por dicho sitio, alegando que la colindancia de la hacienda 'Reunión' era por un canal de mampostería que conduce

las aguas del riego y no por el sitio donde quería establecerla la demandante.

"8. Que entre la margen derecha del río 'Guamaní' sitio por donde alega la demandante pasa su colindancia, y el canal de mampostería situado por donde alega la demandada es la colindancia de la hacienda 'Reunión,' existe una parcela de terreno de trece cuerdas nueve centavos conocida con el nombre de 'Pastos de las Quintinas' que es objeto de esta controversia."

La corte entonces continúa diciendo:

"Si examinamos la prueba presentada por ambas partes veremos que ésta no trata de probar el dominio de la parcela de terreno que se trata de reivindicar, sino de fijar la colindancia que divide dichas fincas y de determinar el sitio por donde ha de pasar la empalizada o cerca divisoria. La prueba testifical es contradictoria y en su mayoría se refiere a manifestaciones que dicen los testigos les fueron hechas por los anteriores dueños señores Amorós Hermanos, pero de esta prueba no podemos llegar a la conclusión de cual de las dos partes litigantes es la colindancia digo, es la verdadera dueña de la parcela que se reclama, siendo ésta una cuestión que queda a resolver después que se determine cual es la línea divisoria de ambas fincas.

"Si examinamos la prueba documental, veremos que los títulos de la parte demandante en cuanto a esta colindancia, o sea la colindancia este de la hacienda 'Reunión' indica que colinda con la finca de don Santiago Porrata, sin especificar objeto alguno que indique dicha colindancia.

"Si examinamos la prueba documental de la demandada veremos que ésta indica en su colindancia oeste, la hacienda 'Reunión,' especificando que las separa el río. Pero de la inspección ocular hecha por la corte aparece que el cauce de dicho río durante los últimos años ha variado grandemente existiendo en la actualidad varios cauces secos de gran anchura, sin que podamos determinar a que cauce es al que se refiere dicha escritura.

"Las partes han presentado gran número de planos, pero todos estos planos hechos de acuerdo con sus respectivas contenciones. Así tenemos que el plano marcado *exhibit* 17 del demandante, donde aparecen las fincas de la demandada y la porción que se reivindica. En dicho plano el cauce del río está trazado en forma tal que da a la demandada en su finca, una cabida de 49 cuerdas con cuatro cen-

tavos de otra. Este plano ha sido reconocido por el perito como un plano exacto. En cambio tenemos el plano de la demandada marcado letra 'A' de la demandada, en el cual se coloca el cauce del río en tal situación que disminuye la finca de la demandada a 36 cuerdas trece céntimos, o sean 12 cuerdas más o menos de diferencia en el plano de la demandante. Y este plano también es correcto, consistiendo esta diferencia en la colocación del cauce del río, según se elija uno u otro de los varios cauces que en el mismo se han trazado.''

La corte dice entonces que como el presente pleito era uno de reivindicación, la parte demandante debía probar el dominio sobre dicha parcela de terreno de modo tal que pudiera identificarse en caso de ejecución de sentencia sin necesidad de ulterior explicación, y dijo la corte además que toda la prueba en este caso tendía a demostrar el sitio por donde debe pasar la colindancia que separa las dos fincas y según por donde se determine dicho sitio si la parcela que se reclama pertenecería a la demandante, o a la demandada. Dijo la corte que si la colindancia pasaba por el sitio en que alega la prueba de la demandada, no hay duda alguna de que la parcela pertenecía a ella; que si la colindancia pasaba por el sitio en que alegaba la demandante, entonces la parcela pertenecía a la demandante.

La corte también expresa que esta es una cuestión que no podía resolverse dentro de un pleito entablado exclusivamente con el objeto de reivindicar una finca, pero que si la colindancia ha desaparecido y no puede señalarse de común acuerdo debe seguirse un procedimiento para fijar dicha colindancia. La corte entonces llegó a ciertas conclusiones de ley que no es necesario reproducir, y dictó sentencia en la cual la conclusión esencial fué la siguiente:

''De las pruebas practicadas y de las admisiones de las partes, la corte entiende que debe dictar y dicta la siguiente sentencia: Que la ley y los hechos están a favor de la parte demandada y en contra de la parte demandante y por tanto, debe desestimar y desestima la demanda interpuesta, sin perjuicio de presentarla de nuevo, una vez

se haya fijado la colindancia; imponiendo a la demandante las costas, desembolsos y honorarios de abogado.''

Estamos enteramente en desacuerdo con esta declaración o conclusión de la corte. Cuando se fijan tres lados de un cuadrilátero o todos menos uno de otra figura geométrica y sólo es necesario una simple línea para completar la figura, no hay duda alguna de que una parcela de terreno puede ser enteramente identificada de modo que el márshal pueda dar posesión de ella a un demandante tan pronto como se determine la línea que falta. En el caso de *El Pueblo* v. *Siragusa*, 18 D. P. R. 595, por ejemplo, el cual ha sido citado por la corte, la dificultad, entre otras, era que no hubo prueba tendente a establecer una de las colindancias. Si los demandantes en ese caso hubieran podido fijar la colindancia que faltaba mediante preponderancia de prueba y desvanecer las demás dificultades, el resultado hubiera sido diferente. En ese caso faltó prueba respecto a una de las colindancias. No hay falta de prueba en este caso, aunque pueda haber conflicto en la misma. Tal conflicto, si hubo alguno, debió haberlo determinado la corte.

La parte apelada dice que este es un caso en que hubo conflicto en la prueba que fué resuelto por la corte inferior. En vista de los hechos probados y de la sentencia en este caso, no hay duda alguna de que la corte se negó a resolver el conflicto que pudo existir. Dijo la corte que los demandantes habían equivocado su presente acción. De modo que no habiendo la corte resuelto la cuestión en controversia, o sea, cuál era la principal colindancia al este de la finca ''Reunión,'' esta corte podría optar entre devolver el caso para que se fijara la colindancia, o resolver ella misma el caso. Consideramos la prueba de la demandante tan fuerte y el conflicto promovido por la prueba de la demandada tan débil, que creemos que es nuestro deber resolver el caso en esta corte, como entendemos que debió haber sido resuelto en la corte inferior.

Para los fines de conveniencia en la discusión, nos referiremos a la finca de la demandante como "Reunión" y a la de los demandados como "Porrata," según dichas fincas fueron descritas familiarmente por los testigos.

Los demandantes presentaron como prueba dos contratos de arrendamiento en los cuales la colindancia oeste de la "Porrata" se decía que era la "Reunión," separadas por el río. Uno de estos arrendamientos fué hecho a los anteriores dueños de la "Reunión," y el otro al actual arrendatario de la "Porrata," Sr. Agustín Bird, a quien se le hizo parte co-demandada en el pleito. Los apelados dicen que esta descripción era un error pero viniendo de ellos es una prueba *prima facie* sumamente fuerte. No basta con decir que ésto fué un error del notario, especialmente en vista de la prueba documental.

Hubo prueba tendente a demostrar que cuando el anterior dueño de la "Porrata" arrendó esta propiedad a los anteriores dueños de la "Reunión," él entregó a ellos un plano del cual aparece que la colindancia oeste de la "Porrata" es el río "Guamaní" y que al otro lado de éste está "Reunión."

Otro plano que fué admitido por la corte y creemos que su autenticidad es indiscutible, mostraba las anteriores colindancias de la propiedad "Amparo" con la "Reunión" al oesté y el río separando las fincas. "Amparo" pertenecía originalmente a los causantes de Elvira Porrata y "Porrata" fué segregada de la "Amparo." Asimismo en la escritura procedente de la demandada Elvira Porrata por virtud de la cuál entró ella en posesión de la "Porrata" se hace la misma descripción. Igual descripción aparece en una sentencia de expropiación dictada contra Elvira Porrata por la Corte de Distrito de Guayama.

Hay otro plano en los autos que es de poco menos fuerza probatoria por proceder de los demandantes, pero que es una copia de un plano hecho por Antonio J. Porrata en 1865

y que fué entregado a los demandantes por sus causantes en cuyo plano aparece el mismo río como la colindancia oeste de la "Porrata."

Y de fuentes oficiales los demandantes presentaron como prueba un plano de "Reunión" hecho en el año 1876, que acredita que dicha propiedad tiene el río como colindancia este y la propiedad "Amparo" al otro lado del río.

Asimismo y de poco menos fuerza probatoria por proceder de los demandantes, pero hecha ante *litem motam,* una venta por los dueños de "Reunión" a la American Railroad Company, donde aparece el río como colindancia del este.

Hubo a la vez prueba muy fuerte y convincente en el sentido de que cuando los anteriores arrendatarios de la "Porrata" que eran los dueños también de "Reunión" se hicieron cargo de ambas propiedades destruyeron una cerca que había en la orilla oeste del río "Guamaní" y la colocaron más hacia el oeste a lo largo del canal. En otras palabras, ellos pusieron una cerca dentro de la "Reunión" a poca distancia al oeste del río. Esto lo hicieron ellos para unir la finca así cercada a la orilla oeste del río con la "Porrata" al este y convertirla en una vega de ganado. Aquí podemos llamar la atención hacia el hecho de que gran parte de la prueba de la demandada se explica por la teoría de que con el cambio de la cerca todo el mundo hablaba de la finca al este de la palizada como "Porrata," o "La Porrata."

Del hecho de que Agustín Bird puso la colindancia oeste de "Porrata" donde esta cerca estaba anteriormente y contra la voluntad de los demandantes, la prueba no deja duda alguna. La parte de terreno que está entre esta cerca y el río y conocida principalmente por "Las Quintinas" es el terreno que se trata de reivindicar en este pleito.

Con este fuerte caso *prima facie* establecido por los demandantes, el peso de la prueba pasaba a los demandados. Ellos no presentaron prueba documental alguna que no procediera de ellos y de fecha reciente que fijara la colindancia

oeste de "Porrata" al otro lado del río "Guamaní." Su prueba testifical en parte se explicaba, como hemos dicho antes, por el hecho de que los testigos en tiempos pasados vieron un pasto o vega con una cerca al lado oeste del río como colindancia oeste. La prueba testifical de la demandada tendría que ser muy fuerte en verdad para destruir la preponderancia establecida por la prueba de los demandantes toda la cual no hemos tratado de discutir. Por ejemplo, el primer plano de "Amparo" presentado como prueba y que se ha probado que procedía originalmente de los causantes de los demandados, en su reseña histórica al lado derecho del plano dice que la colindancia oeste es el río y que al otro lado está la "Reunión." Este plano está firmado por "Antonio J. Porrata," que era uno de. los anteriores dueños.

Independientemente de los testigos que declaran por referencia y cuyas manifestaciones proceden de otras hechas por los anteriores dueños, según indica la corte sentenciadora, la prueba testifical de los demandados consiste en gran parte en la declaración de la misma Elvira Porrata. Esta declaración se basa principalmente en su memoria en cuanto a la condición física cuando ella era una niña de ocho años. Un portón, por ejemplo, la conduciría por "Las Quintinas" a su propia casa. No consta muy claramente si el pasto de "Porrata" estaba arrendado entonces a "Reunión," pero que ella pasaba por "Las Quintinas" no es prueba satisfactoria de que el título de dicha finca lo tenían sus causantes. *Non constat* que esto lo permitían los que entonces eran dueños de la "Reunión."

Una parte muy importante de la prueba testifical fué la manifestación hecha por el agrimensor Caballero quien demostró que siguiendo el cauce más al oeste del río "Guamaní," el cual se ha probado que tiene varios cauces, la finca de Elvira Porrata al este del río consistiría de 49 cuerdas. El perito de los demandados, Clausells, está ente-

ramente de acuerdo en que de colocarse la colindancia donde
la colocaba Caballero habría por lo menos esa cantidad de
terreno perteneciente a Elvira Porrata, al este del río, o
más bien al este del cauce más al oeste. Los apelados en
su alegato expresan que el agrimensor de la demandante
tomó el cauce más al este del río, mientras que el agrimen-
sor de los demandados tomó el más al oeste. Con sólo leer
uno la declaración de Clausells es bastante para ver que
esto no es una manifestación correcta. El dice terminan-
temente que él y Caballero habían cotejado los planos, siendo
la única diferencia que había entre ellos que Caballero to-
maba el cauce más al oeste y que él tomó un cauce más al
este. Ambos planos de los agrimensores fueron presentados
como prueba. Se preguntó a Clausells si podía determinar
la cantidad de terreno comprendida entre los dos cauces del
río según aparecían en los dos planos, tomando la corte un
receso de quince minutos para permitirle hacer esto. No
solamente manifestó él que la diferencia era de unas tres
o más cuerdas, sino que todavía aparecen sus marcas de
lápiz sobre el plano y muestran que él hizo sus cálculos fijando
terrenos según la colindancia determinada por él al oeste
o hacia "Reunión."

Clausells fué repreguntado minuciosamente y manifestó
que si a la finca en controversia al oeste del río se le agre-
gaba la propiedad al este del río la finca total de "Porrata"
tendría 62 cuerdas. El fijaba 36 cuerdas al este del río en
el plano según lo delineó pero dijo que el cauce del río for-
maba varias cuerdas más y que la diferencia entre los cau-
ces citados formaban más de tres cuerdas, pero como hemos
dicho él estaba de acuerdo con que el plano de Caballero era
exacto, fijando la diferencia en los dos cauces del río.

Es verdad como también aparecía de la opinión de la
corte y de la prueba que la inscripción de "Reunión" como
se hizo en el registro de la propiedad no hacía mención del

río como situado al este, pero este hecho no podía afectar a la cuestión de la verdadera colindancia como aparece del resto de la prueba.

Resulta claro para nosotros que si se permitiera a Elvira Porrata tomar el terreno al oeste del río su pertenencia en conjunto importarían unas sesenta cuerdas tomando en consideración el cauce del río, mientras que se admite sustancialmente y la corte ha declarado probado que todo su terreno sólo asciende a 46 cuerdas. Los apelados dicen que la corte declaró probado que los agrimensores de la demandante tomaron el cauce más al este y el agrimensor del demandado tomó el más al oeste, pero esto no lo dijo la corte. La corte expresó en efecto que si la verdadera colindancia de "Porrata" era el cauce del río como lo delineó Clausells, Elvira Porrata quedaría limitada a 36 cuerdas y que si el cauce fijado por Caballero era el verdadero se le deberían a ella 46 cuerdas. En otras palabras, según vemos la duda de la corte surgió por el temor que tenía en su mente de que si resolvía que la colindancia del cauce del río estaba más al este y los demandantes trataran de ir hasta donde se encontraba este cauce al este, los terrenos de Elvira Porrata necesariamente quedarían reducidos y como el juez no tenía claramente en su mente cuál era el verdadero cauce del río ordenó a las partes a que determinaran fuera del pleito dicha verdadera colindancia.

En verdad podemos decir que la conclusión de la corte muestra concluyentemente que la colindancia es el río y cuando se prueba claramente, como se probó, que los demandantes sólo reclaman el terreno que está al oeste de la orilla más al oeste del río, creemos que la resolución de la corte por sí demuestra que los demandantes tenían derecho a reivindicar. Además de lo que hemos dicho acerca de la conformidad entre los peritos se probaron otras cosas por sus declaraciones y por las de otras personas, o sea que si bien

el río "Guamaní" generalmente está seco, cuando el agua corre tiende más bien a correr en el cauce más al oeste. Clausells dijo que él tomó el cauce más hondo pero dijo también que era un cauce seco.   Caballero manifestó que tomó el cauce donde el agua corría, o algo parecido, y esto lo corrobora por lo menos un testigo.   La variación de los cauces de los ríos o donde el agua corría no fué materia de mucha discusión en el pleito.

Por tanto, declaramos probado (1), que los demandantes son los dueños de la parcela descrita en el segundo hecho de la decisión de la Corte de Distrito de Guayama, *supra;* (2), que la colindancia este de esa finca es el cauce más al oeste del río y que los terrenos en controversia como están expresados en el hecho octavo de la decisión de la corte inferior están dentro de los terrenos pertenecientes a la demandante como se describen en el hecho anterior; (3), que los demandados entraron en posesión de dicho terreno especificado en el referido octavo hecho probado sin título a él y lo retienen en contra de la voluntad de la demandante que es la legítima dueña.

Llegamos a la conclusión de que los demandantes han probado un derecho perfecto para reivindicar la finca así reclamada y que la sentencia dictada por la Corte de Distrito de Guayama debe ser revocada, dictándose en su lugar otra a favor de la demandante como se describirá en la sentencia que dictaremos.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.